HOYLE ET AL *v.* SMITH ET AL.

[74 South. 611, Division B.]

1. EXECUTORS AND ADMINISTRATORS. *Claims against estate. Contract.*
   Before the allowance of a claim for personal services against the
   estate of a decedent, a contract for the same either express or
   implied must be shown.

2. ESTATE OF DECEDENTS. *Claim for services. Evidence.*
   Where a claim was propounded for allowance against the estate
   of a decedent for nursing and care for several years, claimant
   and decedent being sisters and living together, the situation of
   the parties, their relationship one to the other and the circum-
   stances under which they lived as members of the same house-
   hold raise the presumption that the services were intended
   to be gratuitous and evidence to overcome this presumption
   should be clear and positive.

APPEAL from the chancery court of Itawamba county.
HON. T. L. LAMB, Chancellor.

In the matter of the allowance of certain claims
probated by Mrs. Elminah Smith against the estate of
her deceased sister. From a decree awarding partial
relief, H. B. Hoyle and others appeal, and Mrs. Smith
cross-appeals.

The facts are fully stated in the opinion of the court.

*W. D & J. R. Anderson,* for appellant.

All the testimony on the subject shows that there was
no contract between Mrs. Smith and Miss Hoyle either
express or implied by which Miss Hoyle had agreed to
pay Mrs. Smith for her services and care. The testi-
mony shows that Mrs. Smith rendered whatever ser-
vices she did perform out of love for her sister and
without any understanding or expectation of receiving
pay. In speaking of this character of cases or claims
in *Bell* v. *Oats,* 97 Miss. 790, 53 So. 491, our court used

this language in part: "Claims of the character of the one here involved brought up for the first time after the death of the decedent, are looked upon by the courts with disfavor; in order to establish one, the evidence must clearly establish a contract express or implied between claimant and decedent providing therefor."

In 18 Cyc. page 409, in speaking of the allowance of claims for personal services rendered a decedent this language is used.

"But compensation cannot be allowed where such services were performed without any claim for payment during decedent's lifetime, or any expectation of being paid specifically therefor, and without any express or implied promise of remuneration, even though their performance may have been prompted by the hope of obtaining a gift or legacy, which has not been fulfilled."

In 16 Cyc., page 412, in speaking of claims rendered a deceased person by members of their family under obligation to support them, they used this language in part: "The courts regard with suspicion and disfavor claims brought against decedent's estate for personal services rendered by relatives, especially where the latter are members of his immediate family or household, as the presumption is such services, between persons occupying such relations, are intended to gratuitous, hence claims against the estate of a decedent made by a near relative for personal services required stronger proof to establish than ordinary claims by strangers."

We submit that Mrs. Smith never expected any remuneration. Take the testimony as to the statements made by Miss Hoyle and it means this only: That she wanted her sister to have what she left in the way of property. This was only an expression, indicating a purpose or desire to make a will to that effect. The will was never made.

*Wiley H. Clifton,* for appellee.

The general rule of law is that for services rendered or for maintenance and support provided, the party accepting the support and services must pay a reasonable price for the same to the extent of the benefits received.

An exception to this rule is where the family relation exists between parties so situated as to be mutually dependent one upon the other. This exception rests on the idea or principle that both are able to and do assist in the maintenance and support of the family of which they are members, and not on kinship, except in the case of parent and child where there is a legal obligation upon each to support the other when the necessity of the case requires it. In all other cases proof of the rendition and acceptance of the service and support provided, is sufficient to charge the estate, even where there has been no demand for the payment during the life of the beneficiary, or no express promise to pay for the benefit received. 18 Cyc. p. 409, note 51; *Wence* v. *Wykeef, Adm.,* 3 N. W. 685; *Disbrew* v. *Durand,* 24 Atl. (N. J.) 545; *Wallace* v. *Schaub,* 32 Atl. (Md.) 324; *Hutchinson* v. *Trucker,* 15 So. (Miss.) 132.

An understanding to provide compensation for services and support in the beneficiary's will, or by legacy, or through a gift of a piece of land, when not carried out, may be made the foundation of an action against the estate for value of the services and support; and on a *quantum meruit* the value of the land would be the measure of the recovery. 18 Cyc. p. 411.

"Where services are rendered in consideration of a promise to compensate for the same by a conveyance of land, and the promiser dies without making the conveyance, the value of the services may be recovered by an action against his personal representative." 18 Cyc. Tp. 415, note 68; *In Re Williams Estate,* 64 N. W. (Mich.) 490.

In this state a sister is under no more obligation to support and nurture another sister any more than nephews and nieces would be. Then since our statute fixes a lien on the lands of the decedents for payment of debts, nephews and nieces could not take their distributive share in this land without contributing their *pro rata share* to the support and maintenance of the decedent. *In re Gindry Succession,* 4 So. (La.) 893; *Savings Inst.* v. *Tart,* 81 Miss. 276, 32 So. 15.

Stevens, J., delivered the opinion of the court.

Appellants prosecute this appeal from a decree allowing a portion of certain claims probated by Mrs. Elminah Smith against the estate of her deceased sister, Miss M. E. Hoyle. In the course of the administration of the Hoyle estate, Mrs. Smith probated one claim for nine hundred and thirty dollars, nine hundred dollars of which was for nursing, care, and attention given the decedent during the last three years of her life and thirty dollars was for burial expenses. There was another account probated for one hundred dollars, represented to be the amount which the decedent was due W. G. Orr on a joint obligation of Mrs. Smith and her sister, the decedent. Appellee Mrs. Smith also claims allowance for certain taxes paid on the joint property of Mrs. Smith and the decedent, but neither of the probated accounts presented any item for taxes. It appears that there was first a partition suit seeking to have sold for division of proceeds about sixty-five acres of land owned by Mrs. Smith and the decedent as tenants in common. The one-half undivided interest of the decedent in these lands descended to Mrs. Smith, another sister, Mrs. Johnson, and a number of nephews and nieces. A contest over the partition of this land reflects another branch of litigation recently disposed of by this court. The two claims as probated are as follows:

"Miss M. Hoyle, deceased, in account with Mrs. Elminah Smith: Oct. 7, 1908, for services rendered to deceased in the way of caring for an invalid, including the duties and attention of nurse caring for and supporting her, procuring and preparing and serving food to her, procuring and preparing for use clothing, beginning Oct. 7 1908, for three yrs. or thirty-six months at twenty-five dollars per month, nine hundred dollars. October 8th for burial expenses, thirty dollars. Total, nine hundred and thirty dollars."

"Estate of M. E. Hoyle, in account with Elminah Smith to amount paid W. G. Orr on deed of trust to relieve decedent's interest in land from deed of trust so far as W. G. Orr's claim or lien on land relate to whose right Elminah Smith should be subrogated, one hundred dollars."

The testimony offered on behalf of the claimant, briefly stated, shows that, for a number of years prior to her death, Miss Hoyle was a confirmed invalid; that for many years the decedent lived with her sister Mrs. Smith, and during the lifetime of Mrs. Smith's husband; that the husband of Mrs. Smith died a year or two before the death of Miss Hoyle; that each of the two sisters were near seventy years of age and owned jointly a farm of some sixty or sixty-five acres; that for several years they lived in the town of Fulton and there took boarders in their home, but, this venture not being successful, they moved to the farm, where they lived during the three years next preceding the death of Miss Hoyle; that Mrs. Smith had no children; that the two sisters occupied the farm premises and got their meager support therefrom; that Mrs. Smith attended to the joint business, made the purchases, and collected the rents; and that she personally nursed and cared for invalid sister for many years. The evidence further shows that the two borrowed from W. G. Orr originally the sum of one hundred and fifteen dollars

and executed a deed of trust upon their farm to secure the same.

The testimony shows that there was no express contract whereby the decedent ever agreed to pay, or ever in her lifetime paid, her sister anything for nursing or support. Th only evidence from which a contract could be implied is the evidence of one or two witnesses who testify to certain statements made by Miss Hoyle in her lifetime to the effect that she appreciated the attention which her sister had given her and expected at her death Mrs. Smith would have whatever property the decedent left. There was no effort, however, to execute a deed or will, and the undivided interest of Miss Hoyle in the real estate mentioned descended to her heirs in accordance with the law of descent and distribution. The chancellor allowed the sum of two hundred sixty-six dollars and twelve cents, "being the full amount allowed by the court of all accounts and claims filed by said Mrs. Smith against the estate of Miss M. E. Hoyle, deceased, the remainder of said account being disallowed by the court." It is impossible to determine from the language of the decree just how the chancellor arrived at the amount allowed. Appellants challenge the propriety of any allowance whatever for taking care of the decedent, while appellee, Mrs. Smith, prosecutes a cross-appeal complaining at the refusal of the chancellor to allow the full amount. Appellants raise the question of the statute of limitations, but in the disposition of this appeal it will be unnecessary to rule on this question.

The claim of Mrs. Smith might naturally arouse one's sympathy and appeal to one's sense of justice. But there can be no obligation on the part of the estate here proceeded against in the absence at least of an implied obligation or contract. The proof shows without dispute that the two old sisters, Mrs. Smith and Miss Hoyle, lived together upon their joint property as members of the same household, and that the attention

and care which Mrs. Smith lavished upon her invalid sister was prompted by feelings of natural love and affection, and that her services as caretaker were not rendered in pursuance of any contract whatever or with any expectation of compensation. During the many years prior to the death of Miss Hoyle, Mrs. Smith rendered no bill for services or support, and this claim is now presented for the first time long after Miss Hoyle's death. If Miss Hoyle intended for Mrs. Smith to have her property, she could have easily executed a deed or will. Our court, in *Bell* v. *Oats,* 97 Miss. 790, 53 So. 491, in speaking of this character of claim, said:

"Claims of the character of the one here involved, brought up for the first time after the death of the decedent, are looked upon by the courts with disfavor." In order to establish one, "the evidence must clearly establish a contract, express or implied, between the claimant and decedent, providing therefor."

To the same effect is the text in Cyc. vol. 18, pp. 409, 412.

There is no evidence that Mrs. Smith ever expected renumeration. The situation of the parties, their relationship one to the other, and the circumstances under which they lived as members of the same household, raise the presumption that the services were intended to be gratuitous. Evidence to overcome this presumption should be clear and positive. If this rule is not strictly enforced, then a wide avenue is opened up for the presentation of padded and fraudulent claims against the estates of decedents brought forward by relatives for the first time after the death of the party whose estate is sought to be charged. Such after-death, *quantum meruit* open account claims should be viewed with suspicion. Conceding, then, the good faith of Mrs. Smith in the instant case, the proof is insufficient to establish her account of nine hundred dollars; and the same, in our judgment, should be disallowed *in toto.* We do not understand that appellants challenge the

allowance of thirty dollars for burial expenses, and little is said by counsel for appellants as to the one hundred dollar claim. We think the decree of the chancery court should be reversed, and the cause remanded, with directions that the chancellor allow, if he deems proper, the burial expenses and the correct proportion of the decedent's obligation to W. G. Orr.

*Reversed and remanded.*