### AT THE

## MARCH TERM, 1920.

---

### GAULDEN v. RAMSEY,

[85 South. 109, In Banc. No. 21135.]

1. EXECUTORS AND ADMINISTRATORS. *Claim for board, lodging, and services should be allowed if supported by contract.*

   A claim against the estate of a near relative for board, lodging, and services should be allowed if supported by a contract either express or implied.

2. EXECUTORS AND ADMINISTRATORS. *Sufficiency of description on probate of claim based on a continuous parol contract.*

   The requirement of section 2106, Code of 1906 (Hemingway's Code, section 1774), that a person desiring to probate a claim resting in parol shall present to the clerk an itemized account or a statement of the claim in writing, etc., is complied with in probating a claim for board, lodging, and services based on a continuous contract covering a period of three years by describing the claim as "To care and attention including board, lodging, . . . and service for three years prior to the death of said Mrs. O. D. Graves, and being from April 20, 1913, to April 20, 1916."

3. EXECUTORS AND ADMINISTRATORS. *Defective description of some of the several items of a claim does not render the probate of the claim void.*

   Where the written statement of a claim against the estate of a decedent required by section 2106, Code of 1901 (section 1774, Hemingway's Code), containing several items, is defective because some of the items are defectively described, and the amount demanded is stated in gross, apparently covering all of the items, such defect does not render the probate of the entire claim void, if the amount demanded does not exceed the amount due the creditor by the deceased on the items that are properly described.

4. LIMITATION OF ACTIONS. *As to continuous contract statute does not begin to run until termination.*

   A contract for board, lodging, and services, whether express or implied, with no time fixed for payment or for the termination of the contract, is a continuous one, and the statute of limitations is inoperative until the contract is terminated.

(1)

5. EXECUTORS AND ADMINISTRATORS. *Administrator may pay claim for funeral expenses without probate.*

A claim for funeral expenses is not a claim against the deceased, and need not be probated, and it is only claims against deceased which the administrator is forbidden to pay unless probated, in view of Code 1906, section 2105 (Hemingway's Code, section 1773).

6. EXECUTORS AND ADMINISTRATORS. *Duty of administrator to pay funeral expenses.*

It is the duty of the administrator to bury deceased and to pay the expenses incident thereto out of the property of the deceased, and, if this expense had been incurred prior to the appointment of an administrator, it becomes a charge against him after his appointment payable out of the property of the deceased.

7. EXECUTORS AND ADMINISTRATORS. *Physicians' and druggists' bills should be separately probated.*

Physicians' and drug bills necessarily incurred in a decedent's lifetime are debts against the deceased, and, where not paid by claimant at the request of deceased, should be separately probated on the affidavit of the original creditors that they were "just, correct, and owing from the deceased," in accordance with Code 1906, section 2106 (Hemingway's Code, section 1774).

ETHRIDGE, J., dissenting.

APPEAL from chancery court of Wilkinson county.
HON. R. W. CUTRER, Chancellor.

Suit by R. C. Ramsey against I. F. Gaulden, administrator of Mrs. O. D. Graves, deceased; to have the administrator ordered to sell realty to pay complainant's probated claim against the estate, with answer by the administrator and the heirs. Decree for complainants, and the administrator appeals. Reversed and remanded.

*Bramblett & Bramblett,* for appellant.

This was the case of an aged mother living with her daughter. Could there be a closer family relation? To quote 17 Cyc. 412: "Persons in family relation. The courts regard with suspicion and distrust claims brought against a decedent's estate for personal services rendered by relatives, especially where the latter are members of his immediate family or household, as the presumption

is that such services, between persons occupying such relations, are intended to be gratuitous, and hence claims against the estate of a decedent made by near relatives for personal services required stronger proof to establish them than ordinary claims by strangers."

Note 60 says: "This rule has been applied to a claim for support or services by a child against the estate of a parent." Citing many cases; also one standing *in loco parentis.* In the absence of an express contract, the authorities are in accord, that the right to compensation for board and lodging does not exist when relatives live together as members of one family, to quote the exhaustive case note to *Mark, Admr,* v. *Josie Boardman,* v L. R, A. (N. S.) 819:

"The doctrine established by the authorities is that, when relatives live together as members of one family, or as one household, the right to compensation for board and personal services does not exist in the absence of an express contract; but, when such relation does not exist, an implied contract to pay may arise. Thus in *Disbrow* v. *Durand,* 54 N. J. L. 343. 33 Am. St. Rep. 678, 24 Atl. 545, the facts show that a brother and sister lived together for more than twenty years, until the brother's death. The sister, who was a widow, had no means of subsistence, and refused to live with her son, preferring to live with her brother as his housekeeper. There was no proof that the subject for her service was ever discussed or contemplated by either of them. In denying the sister's right to recover for her services, the court said: 'In order to recover for the services the plaintiff must affirmatively show, either an express contract for the remuneration existed, or that the circumstances under which the services were rendered were such as exhibit a reasonable and proper expectation that there would be compensation. The reason of this exception to the ordinary rule is, that the household family relationship is presumed to abound in reciprocal acts of kindness and good will, which tend to the mutual comfort

and convenience of the family, and are gratuitousely performed; and, where that relationship appears, the ordinary implication of a promise to pay for services does not arise, because the presumption which supports such implication is nullified by the presumption that between members of a household services are gratuitously rendered." Many cases are cited.

Claim barred by statute of limitations. Even had the close relation of mother and daughter between decedent and claimant's wife living together in one family not existed and even had there been an express or implied contract still this claim is barred by the statute of limitation which we respectfully submit we can demonstrate to the court. In doing this we ask the court to follow only one case: *Duffy* v. *Kilroe* (Botto case), 116 Miss. 7.

We first ask the court to compare the claim in this case which is attached to claimant's petition, page 4, record, with the claim in the Botto case. This comparison reveals at once that the Botto account is better itemized than the account before the court.

In the Botto case the year and months, but no days are given, while in this case no days, no months and no years are given—Merely the dates, April 20, 1913, to April 20, 1916, and nothing else. In the Botto case the first charge was:

<pre>
1908—April,—63 visits at $5.00........ $315.00
4 visits at $10.00........      ...... 40.00
                                     $355.00
</pre>

A total of sixty-seven visits for April—probably counsel would argue that this Botto account shows on its face that these visits were not made on one day, April 1st, but throughout the month of April. However, the supreme court said: "It is not necessary for the account to be so minutely itemized in order for the appellee to recover (18 Cyc. 480; *Lehman* v. *Powe,* Miss. 455. 49 So. 622); but because of appellee's failure to so itemize it, construing

as we must, the account most strongly against him, the true date of each item thereof must be held to be the first day of the month in which it is charged, and the statute of limitation must be applied accordingly.'' P. 11.

As stated, the only dates in the account before the court being April 20, 1913, to April 20, 1916, the due date of each item thereof must be the first day of the period in which it is charged, namely, April 20, 1913.

We respectfully submit that the Botto case is conclusive authority on this question and we hesitate to discuss it further. However, let us consider this question in another light. Opposing counsel will probably argue as was done in the court below, that this account shows on its face a monthly charge of thirty dollars. If this argument is made, then the cause of action had accrued prior to decedent's death for every month's board—including the last month, if we must construe the account most strongly against the claimant; the cause of action accrued for the last month prior to decedent's death although on the same date—but in any event it was due at the date thereof, and there was nothing to prevent the running of the statute of limitations.

Mrs. Graves died on April 20, 1916. Petitioner's claim was filed on January 2, 1919, two years and eight months after the last date on petitioner's (appellee) account, April 20, 1916. Therefore, taken in this light, the charge of thirty dollars, for every month of the account is barred except the last four months. Section 3100 of the Code of 1906 provides: ''In all actions brought to recover the balance due upon a mutual and open account, where both parties are merchants or traders, the cause of action shall be deemed to have accrued at the time of the true date of the last item proved in such account; and in all other actions upon open accounts, the period of limitation shall commence to run against the several items

thereof from the dates at which the same respectively became due and payable.''

Section 3099 of the code of 1906, provides: ''Actions on an open account or stated account not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after.''

We respectfully submit, first, that under the rule laid down by this honorable court in the *Botto case, supra,* the entire account for board] and lodging is barred; second, if the Botto case is not followed, the most allowable for board and lodging is for four months, one hundred and twenty dollars.

We respectfully submit that the judgment of the court below should be reversed.

*Ackland H. Jones,* for appellee.

Appellee was a son-in-law of the deceased Mrs. O. D. Graves, having married her daughter Bessie, but the fact being he was such son-in-law does not necessarily carry with it another fact, that the board, lodging, etc., given, by him to his mother-in-law was gratuitous. The rule is, as stated by appellants, that compensation for board, etc., is not allowed, ordinarily, in cases where members of the same family live together. I am willing to admit that rule, and to admit its justice and necessity, and yet, as is shown by the record of this case, where there is an agreement to pay for such services and care, that rule cannot overturn such agreement.

For fifteen years the deceased lived with this appellee; she repeatedly stated to her children that she would not do so unless she paid for the services. The sole witnesses on the part of the appellee, the sole witnesses, in the case, were the four children of the intestate, and these four being her sole living children, and inheritors

of her estate. Appellee could not testify as to this agree-
ment with the deceased; he could not testify as to any-
thing occurring during her life, and so he was driven to
make his proof from the mouths of his adversaries. It is
true that one of these adversaries is his wife, that one
is his sister-in-law and two are his brothers-in-law, but
each and all of them, although defendants and testifying
against their own interests, frankly admit that they had
heard their mother state many times that she intended
to pay for this service. Mrs. Ella Ramsey, sister-in-
law, goes further and swears that her mother said that
she would not live with her son-in-law, the appellee, with-
out paying him. Three of these defendants further testi-
fy that the care given by appellee was worth more that
he charged for it, and the fourth says he is not familiar
with the proper charge.

No question is made, no denial is had of the fact that
this appellee actually paid out, after the death of the
intestate, of his own money, the sum of two hundred and
thirty-eight dollars and fifty cents for the funeral ex-
pense, and the expenses of the last illness. All of these
defendants admit that.

The established facts being, then that the account of
appellee is for a less sum than would have been charged
by the four defendant children of the intestate; that
the intestate always stated that she would not accept
it without paying for it, and this fact being proven by
the defendants, that there is no dispute whatever as to
expenses of the last illness and the funeral, what is the
law controlling?

"The general rule deducible from the authorities is
that where a parent resides in the family of a child, the
presumption is that no payment is expected for the
services rendered or support furnished by the one to the
other. This presumption is not, however, conclusive,
and may be overcome by proof either of an express
agreement to pay or of such facts and circumstances as

show satisfactorily that both parties at the time, expected payment to be made. Whenever, therefore, compensation is claimed in any case by either parent or child against the other for services rendered, or the like, the question whether the claim should be allowed must be determined from the particular circumstances of the case. There can be no fixed rule governing all cases alike. In the absence of any direct proof of an express contract, the question which must be determined is whether it can be reasonably inferred that pecuniary compensation was in view of the parties at the time when the services were rendered or the support was furnished; and the solution of this question depends on a consideration of all the circumstances of the case. 21 American and English Ency. Law (2 Ed.), 1061. The proof is positive; the agreement and promise to pay is fully shown; the amount is reasonable and the finding of the chancellor of the facts, undisputed as they were, could not have been otherwise. On this phase of the case there can be no doubt.

Coming now to the second claim of the appellants, it being that this claim was barred by the statute of limitations, it is almost sufficient to rest the case on the argument made by appellants. *Duffy* v. *Kilroe,* 116 Miss. 7, was also one "three year open account" although it was held that the due date of each item must be held to be the first day of the month in which it was charged, the entire account for the three years was upheld, and the creditor there was allowed the full sum sued for. Three years did not bar the claim in the Botto case. *Duffy* v. *Kilroe,* 116 Miss. 7.

The cited case also holds: (11) That a debt not barred by limitation at the death of the debtor remains alive in any event, for at least one year after the death of the debtor. In the case at bar, the account was not barred, and so the statute ceased to run.

The account here is for the board, lodging, etc., for three years from April 20, 1913, to April 20, 1916. It shows an aggregate sum of one thousand and eighty dollars, or a monthly charge of thirty dollars. The account is clear and direct; it could not well have been itemized in detail except by stating each monthly charge of thirty dollars beginning with April 20, 1913, Had that been done then under *Duffy* v. *Kilroe, supra,* no part of the account would have been barred. It was not necessary, however to itemize the account with such minute particularity. Payment of the account would unquestionably have barred the claimant from any other action and would have been an absolute acquittance for all of it. *Lehman* v. *Powe,* 95 Miss. 455.

The conclusion seems unescapable, and is inescapable, that this appellee has fully proven his claim by the defendants themselves, by the very parties whose interest it was to disprove it. That no part of the account and claim is barred, and that if *Duffy* v. *Kilroe,* and if all the other decisions of this court are to be followed, the decree of the chancellor will be affirmed.

SMITH, C. J., delivered the opinion of the court.

The appellee filed his petition in the court below in the matter of the administration of the estate of Mrs. O. D. Graves, deceased, alleging that the time for probating claims against the estate had expired; that his claim of one thousand three hundred and eighteen dollars was the only claim probated against the estate; that it was necessary for certain lands of the decedent to be sold in order that from the proceeds thereof his claim against the estate might be paid, and prayed that the administrator be ordered to make this sale and apply the proceeds thereof to the payment of his claim. The principal item of this claim, as set forth in the probated statement thereof, is:

"To care and attention including board, lodging, medical care and drugs prior to last illness, and service for three years prior to the death of said Mrs. O. D. Graves, and being from April 20, 1913, to April 30, 1916, one thousand and eighty dollars."

The remainder is for the funeral expenses of the deceased, and two other items described as "Doctor's bill last illness, thirty-six dollars," and "drug bill paid, ten dollars." The affidavit to this claim required by section 2106, Code of 1906 (section 1774, Hemingway's Code), was made by the appellee. The administrator and the heirs of the deceased answered this petition, denying the validity of the appellee's entire claim, and alleging: First, that it was not probated in the manner required by law; and, second, that it is barred by the statute of limitations. There was a decree in accordance with the prayer of the petition, and an appeal to settle the principles of the case was granted the administrator.

The payment by the appellee of the funeral expenses of the deceased and her physician's and drug bills was fully proven, and the appellant's claim that the appellee had sufficient money in his hands belonging to the deceased to cover these items is not sustained by the evidence.

The appellant introduced no evidence in denial of the first item of the appellee's claim, and the evidence for the appellee is to the effect that the deceased was his mother-in-law; that for fifteen years immediately preceding her death, which occurred on April 20, 1916, she lived with him as a member of his family, the last three years of which being spent by her continuously in his home, she having been accustomed prior thereto to occasionally visit other members of her family, during all of which time the appellee gave her "board, lodging, care, and attention" worth thirty dollars per month; that the deceased expected to pay the appellee for her care

and maintenance and had promised so to do. This evidence is sufficient to support the appellee's claim for compensation. *Hutcheson* v. *Tucker,* 15 So. 132; *Bell* v. *Oates,* 97 Miss. 790, 53 So. 491; *Hoyle* v. *Smith,* 113 Miss. 729, 74 So. 611; 21 Am. & Eng. Ency. of Law (2d Ed.), 1061; 18 Cyc. 412.

Section 2106, Code of 1906 (section 1774), Hemingway's Code), requires a person desiring to probate a claim against the estate of a deceased person, in the absence of written evidence thereof, to present to the clerk of the chancery court "an itemized account or a statement thereof in writing signed by the creditor" etc. The first item of the appellee's claim is not evidenced by writing nor does it consist, in so far as it relates to care and attention, including board, lodging, and services, of separate items, but consists of one item only, based on a continuing parol contract. It is true that the statement of the claim includes medical care and drugs, and it may be that these items should have been more specifically described, but that defect in the statement of the claim, if such it is, is not material, for the reason that the amount claimed is not in excess of that due the appellee for board, lodging, and services, which is properly set forth in the statement.

If the statute of limitations commenced to run against the appellee's claim for board and lodging when furnished and for services when rendered, it may be that because of the length of time that elapsed after the death of the deceased before the claim therefor was probated a part of it would be barred. But this statute did not begin to run against this claim until the death of the deceased, and it was probated within the required time after her death.

As hereinbefore stated, the deceased was living with the appellee under a promise to pay him for her board, lodging, and services, which board, lodging and services were of necessity continuously furnish-

ed, and rendered, with no time fixed for the payment by the deceased therefor or for the termination of the contract. Consequently the contract, and it is immaterial whether it was an express or implied contract, was a continuous one, and the statute of limitations does not begin to run against such a contract until it has terminated, which in the case at bar was by the death of the deceased. 3 Elliott on Contracts, section 2661, p. 798; 25 Cyc. 1077, 1104, et seq.; 1 Wood on Limitations (4th Ed.), p. $661, section 119c (2); *Sullenbarger* v. *Ahrens,* 168 Iowa, 288, 150 N. W. 71; *Crampton* v. *Logan,* 28 Ind. App. 405, 63 N. E. 51; *Bowie* v. *Trowbridge,* 158 Iowa, 99, 138 N. W. 846.

It is unnecessary for us to determine whether the appellee's claim for the funeral expenses of the deceased is set forth in the manner required by section 2106, Code in 1906 (section 1774, Hemingway's Code), for the reason that it need not have been probated at all. It is not a claim against the deceased (*Dobbs* v. *Chandler,* 84 Miss. 372, 36 So. 388), and it is only claims against the deceased which the administrator is forbidden to pay unless it has been probated (section 2105, Code of 1906; section 1773, Hemingway's Code).

It is the duty of an administrator to bury the deceased and to pay the expenses incident thereto out of the property of the deceased. *Donald* v. *McWhorter,* 44 Miss. 124. And, if this expense has been incurred prior to the appointment of the administrator, it becomes a charge against him after his appointment payable out of the property of the deceased.

The physician's and drug bills, are debts against the deceased, as they were necessarily incurred in her lifetime, and, as the evidence does not disclose that they were paid by the appellee at the request of the deceased, they should have been separately probated on the affidavit of the original creditors that they were "just, correct,

and owing from the deceased," etc., in accordance with the provisions of section 2106, Code of 1906 (section 1774, Hemingway's Code). *McWhorter* v. *Donald*, 39 Miss. 779, 80 Am. Dec. 97; *Persons* v. *Griffin*, 112 Miss. 643, 73 So. 624. These two items of the appellee's claim should not have been allowed.

*Reversed and remanded.*

ETHRIDGE, J., dissents.